MICHAEL H. BUTLER, *Plaintiff in Error,*

*vs.*

JOEL BARLOW, *Defendant in Error.*

ERROR TO THE ROCK COUNTY COURT.

By the Statute, fence-viewers are authorized to assign to the occupants of adjoining lands the respective share of a division fence which each occupant shall erect and repair.

So, where either party has voluntarily erected more than his proportion of a partition fence, the fence-viewers may assign the portion to be thereafter repaired or maintained by each, and may ascertain the value of that portion of the fence which has been voluntarily erected by the party, beyond his just proportion thereof. But here the power of those officers, in that behalf, ceases.

But the fact of payment or non-payment of the value so ascertained, the fence-viewers cannot try or determine.

On suit brought to recover the value of the fence so ascertained by the fence-viewers, the defendant may prove payment made either before or after the award of the fence-viewers.

Other matters relative to the powers and duties of fence-viewers.

This cause was originally commenced in a Justice's Court, by the plaintiff in error against the defendant in error, and judgment rendered for the plaintiff for damages and costs. The defendant sued out a writ of certiorari to the County Court of Rock county. The return of the justice contained the plaintiff's declaration, and the testimony of several witnesses, from which it appears that the plaintiff and defendant in error were occupants of adjoining lands, enclosed by fences, and a controversy arose as to their respective rights in and to a certain fence between their lands. The defendant refused to pay plaintiff for one half of the fence, which had been voluntarily erected by plaintiff, and application was made to the fence-view-

ers of the town.  The parties appeared before the
fence-viewers, and the matter in controversy having
been examined, the said fence-viewers then and there
did determine and decide that the defendant should
maintain thirteen rods of said partition fence—giving
the boundaries, &c.  And they further found and
assessed the value of said fence so assigned to defend-
ant at the sum of twelve dollars.

The defendant pleaded the general issue, and the
cause was tried by the justice.  On the trial it was
proved that Butler and Barlow occupied lands ad-
joining, and that the fence in controversy was built
by Butler ; that the payment on the award of the
fence-viewers had been demanded and refused.  The
assignment and award of the fence-viewers was offered
and received in evidence, and the plaintiff rested.

The defendant then called a witness to prove that
the land occupied by plaintiff at the time the fence
was built belonged to one Davis, and that Butler had
a contract with Davis for the purchase and sale of it ;
that in this contract Butler bound himself to build
this division fence as part payment for the land, and
that the building of the fence was allowed to Butler
by Davis ; that subsequently to this, Davis conveyed
to Barlow the land adjoining that conveyed to Butler,
as above stated.  To the introduction of this testimo-
ny the plaintiff objected, and the court sustained the
objection, to which the defendant excepted.  The
cause was then submitted to the justice, and judgment
was rendered for the plaintiff for twelve dollars dam-
ages, and costs of suit.

The cause was then taken by certiorari to the Coun-
ty Court, and the judgment was there reversed.  It
is now brought before this court by writ of error, to
reverse the judgment of the County Court.

*J. A. Sleeper*, for plaintiff in error, argued the following points : That the fence-viewers are authorized by the statute, *chap.* 14, *sec.* 3, 5, to bring the parties before them, and assign the portions of a partition fence, which each party shall thereafter maintain; and by Sec. 8, if it appears that either occupant voluntarily erected the whole or more than his share, the other shall pay for so much as shall be assigned to him.

The fence-viewers having acquired jurisdiction, they will be deemed to have acted upon sufficient evidence before them, and to have decided the question according to the right of the case ; and their decision upon the question must be conclusive. *Clark vs. Brown*, 18 *Wendell*, 213 ; *People vs. Murray et al.*, 6 *Hill*, 468.

*Truesdell, Jordan & Bennett*, for defendant in error. Before the owner of any lands can be compelled to keep up and maintain a partition fence, his own land must be *enclosed* with a fence and be occupied. *Rev. Stat., chap.* 14, *sec.* 2. The evidence in this case does not show that Barlow's land was enclosed. Nothing is to be presumed in favor of inferior tribunals of limited jurisdiction. All facts necessary to confer jurisdiction must appear upon the face of the proceedings. 4 *John.* 292 ; 3 *Wend.* 267.

The fence-viewers had no jurisdiction to ascertain the value of the partition fence between Barlow & Butler. No way is provided by the statute for fence-viewers to proceed in ascertaining such value ; but admitting that they had jurisdiction to assign to Barlow a portion of the fence for him to maintain, and to assess its value, still the statute does not, in express terms, make their decision conclusive as to the value.

It is nowhere expressed or implied in the statute that authority is given to the fence-viewers to try the question whether or not Butler had been *paid* for building the whole fence. Such a construction as is contended for would have the effect to allow Butler to collect payment at least twice.

Admitting that the Statute must receive the construction contended for by the plaintiff in error, would it be constitutional? Does it not violate the right of trial by jury? Could the legislature say that all demands for work and labor under fifteen dollars should be tried by the fence-viewers, whose decision would be final?

*By the Court*, CRAWFORD, J. Assuming that the fence-viewers had jurisdiction in this matter, and we are inclined to think they had, a proper construction of sections 5 and 8, of chapter 14, of the Revised Statutes, will dispose of the case. Section 5 is as follows: " When any controversy shall arise about the rights of the respecctive occupants, in partition fences, or their obligation to maintain the same, either party may apply to two or more fence-viewers of the town where the lands lie, who, after due notice to each party, may in writing assign to each his share thereof, and direct the time within which each party shall erect or repair his share of the fence, in the manner before provided; which assignment being recorded in the town clerk's office, shall be binding upon the parties, and upon all the succeeding occupants of the lands; and they shall be obliged always thereafter to maintain their respective portions of said fence." The power conferred upon the fence-viewers by this section is merely to assign in writing to each of the

adjoining occupants of enclosures his share of the partition fence or fences, and also to direct the time within which they shall respectively erect or repair the portion of such fence so assigned to each of them in the manner provided in section 1. Beyond this the fence-viewers can determine nothing under section 5, but their determination or assignment is conclusive upon the parties and their successors in the occupancy of the lands just so far as they have decided the share of each, and the time of repairing or erecting the same, and no farther.

Section 8 is as follows : " When in any controversy that may arise between occupants of adjoining lands, as to their respective rights in any partition fence, it shall appear to the fence-viewers that either of the occupants had, before any complaint made to them, voluntarily erected the whole fence, or more than his just share of the same, or otherwise become proprietor thereof, the other occupant shall pay for so much as may be assigned to him to repair or maintain, the value of which shall be ascertained and recorded in the manner provided in this chapter." By virtue of this section, when either party had voluntarily erected more than his just proportion of the partition fence, which fact should be ascertained and determined by the fence-viewers, they could only assign the proportion of the fence to be thereafter repaired or maintained by each, and ascertain the value of that portion of the fence which had been voluntarily erected by the party beyond his just proportion thereof. This is the extent of the power conferred upon the fence-viewers by this section, and although the occupant of the adjoining lands who did not contribute to the erection of the fence, is by this section re-

quired to pay "for so much as may be assigned to

him to repair," yet the payment or non-payment of the value so ascertained is a question not to be determined by the fence-viewers, and over which they have no control whatever.

Although the statute is a salutary one, and ought to be liberally construed in furtherance of the object of its enactment, still we must bear in mind that it is in derogation of the common law rights of parties, and creates a species of tribunal for the determination of certain specified matters, from which determination there is no appeal provided. Hence we are called upon to see that their determination shall embrace no other matters than such as are specially confided to their jurisdiction by the statute. It is certainly enough when it is conceded to two fence-viewers to fix definitely the *value* of that portion of a partition fence built by another, which shall be paid for and kept in repair by his neighbor who has had no voice in choosing the materials or limiting the expense of the structure, without giving to them by implication a final control of other and extrinsic questions, in the decision whereof the party ought to have the privilege of resorting to the ordinary tribunals and modes of proceeding contemplated by the constitution and laws of the land. Any other view of the subject would tend to confer upon inferior and limited jurisdiction, powers which are not given to the constitutional tribunals of the country, and which in some cases might be arbitrarily exercised, to the great injury of the citizen who is not provided with the means of resorting to any other forum for a correction of an unjust decision.

It appears that upon the trial of the cause before

DEC. TERM
1853.

Butler
vs.
Barlow.
the justice of the peace, the defendant offered to prove that previous to any proceedings by the fence-viewers, one G. H. Davis, from whom the defendant, Barlow, had obtained the lands occupied by him, had paid the plaintiff, Butler, for the construction of this whole partition fence, and that after making such payment, Davis conveyed the lands to Barlow. This evidence was rejected by the justice. The defendant also offered to prove that the lands occupied by Butler were, at the time of the construction of the fence in controversy, the property of Davis, with whom Butler had a contract for purchase, in which contract Butler agreed to build the same fence in part payment for the land, and that Butler had received credit for the building of the fence from Davis, who conveyed the land to Butler, after which Davis conveyed the adjoining land to the defendant, Barlow. The justice refused to permit this evidence to be given. This evidence tended directly to destroy the plaintiff's cause of action, and it would be difficult to justify its exclusion upon any principle of law or justice. The nature of the enquiry before the fence-viewers forbid the production of proof of payment before them, for they had no right to determine such a question ; and if the defendant in a suit to recover the value of the fence, as ascertained and assessed by the fence-viewers, were to be prevented from proving that the fence had been paid for, the plaintiff might, under the forms of law, obtain judgment twice. The return of the justice of the peace, to the writ of certiorari in this case, fully justified the County Court in reversing the judgment of the justice ; and therefore the judgment of the County Court must be affirmed.